*T. H. Sweetser & J. Nickerson*, for the defendant.

----

ROBERT S. CAMPBELL *vs.* CHARTER OAK FIRE AND MARINE INSURANCE COMPANY.

If a policy of insurance is not payable till ninety days after due notice and proof of loss, in conformity to the conditions thereto annexed, and the notice and proof of loss which are furnished to the insurers, in compliance with a requirement in the conditions that such notice should show in what manner the building was occupied, state that it was occupied as a hotel, and it appears in proof that no license had been given to keep it as a hotel, and a memorandum of special hazards annexed to the policy prohibits all unlawful business, no action can be maintained upon the policy. So if such notice contains a statement that the building was lighted with burning fluid, and the memorandum of special hazards provides that the policy shall be void if burning fluid is used without permission in writing indorsed on the policy, no action can be maintained.

If an incorrect statement of a material matter has been made through mistake in a notice and proof of loss which were furnished to insurers, in compliance with a requirement in the conditions of insurance annexed to a policy, and no amended statement has been furnished to the insurers before the trial of an action upon the policy, the insured cannot be allowed to prove the mistake, and show that the facts were not as therein stated.

CONTRACT upon a policy of insurance, for one year, dated September 21st 1861, issued by the defendants upon the hotel known as the Neptune House on Chelsea Beach, payable to the plaintiff as mortgagee in case of loss. The policy contained a written provision, inserted upon its face, that " it is understood and agreed that the house is to be occupied the entire year; " and also the following printed provisions : the loss " to be paid within ninety days after due notice and proof thereof made by the assured, in conformity to the conditions annexed to this policy." " It is further agreed that in case the abovementioned premises at any time after the making of and during the time this policy would otherwise continue in force shall from any cause be vacant or without occupant, unless notice of the same shall first have been given to this company and mentioned in or indorsed upon this policy, this insurance shall be void and of no effect." " And that this policy is made and accepted upon and in reference to the application, plan, description or survey filed in this office, and the terms and conditions hereunto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for." The policy was signed at the foot of the first page. On the second page were printed certain classes of hazards, under which were the following clauses : " Camphene, spirit gas or burning fluid, when used and kept on the premises for any purpose, subjects the property insured to an additional charge ; and permission for such use or keeping must be indorsed in writing on the policy; otherwise the same shall be void and of no effect." " And all unlawful business or trade is also prohibited." Conditions of insurance were also annexed, in which it was provided that " persons sustaining loss or damage by fire are forthwith to give notice thereof in writing to the company; and as soon after as possible they shall deliver as particular an account of their loss or damage as the nature of the case will admit, signed with their own hands. And they shall accompany the same with their oath or affirmation, declaring the said account to be just and true showing also . . . . in what general manner (as to trade,

manufactures, merchandise or otherwise) the building insured, or containing the subject insured, and the several parts thereof, were occupied at the time of the loss."

At the trial in the superior court before *Russell,* J., after the decision reported in 7 Allen, 45, *note,* the plaintiff put in a notice under oath, by Henry Bates, the owner of the building, to the defendants, dated and delivered to them on the 7th of November 1861, stating among other things that the hotel was destroyed by fire on the 3d of that month ; that he " occupied and kept the said building as and for a public hotel at the time of the said loss, and had done so from the date of said policy." On the 27th of the same November said Bates made an additional statement in writing to the defendants, showing among other things that " the house was always lighted by burning fluid in lamps."

The defendants proved that during the year 1861 neither Bates, nor his partner who was interested with him in keeping the house, when open, nor the plaintiff, was licensed as an innholder or common victualler; and they contended that the above statements in the two notices given to them showed of themselves a violation of the policy, and were conclusive. But the judge allowed the plaintiff to claim on evidence already in, and to show in rebuttal, that the house was not open for the business of an inn on the day of the fire or after the date of the policy ; that it was a beach house, only open for the summer season ; that it was closed about the middle of September, two men only being left in charge to take care of the house, and some animals left there for the winter; that no burning fluid had been used there since the date of the policy; and that the second statement was obtained through the fraud of the defendants' agent. There was no evidence that the first notice was procured by fraud.

The judge instructed the jury that the facts stated in the preliminary proofs, so far as they were not shown to have been made in mistake or induced by fraud, were conclusive against the plaintiff; that the statements therein, if not by mistake or fraud, would prevent the plaintiff from recovering.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*G. O. Shattuck,* for the defendants.

*A. A. Ranney,* for the plaintiff. The ruling as to the effect of the statements found in the preliminary proofs was at least sufficiently favorable to the defendants. They themselves went into additional proof at the trial on the same point, and it was competent for the plaintiff to rebut this. There was a waiver by the defendants of the estoppel, if there was any estoppel. *Dutton* v. *Woodman,* 9 Cush. 255. *Adams* v. *Barnes,* 17 Mass. 365. *Howard* v. *Mitchell,* 14 Mass. 241. These statements are not conclusive as estoppels *in pais.* They are only evidence as admissions. Only intentional false swearing will avoid a policy. *Levy* v. *Baillie,* 7 Bing. 349. A mistake is not an estoppel. There must be fraud or bad faith to constitute an estoppel. *Plumer* v. *Lord,* 5 Allen, 463. *Brewer* v. *Boston & Worcester Railroad,* 5 Met. 483. *Tolman* v. *Sparhawk,* Ib. 469. The defendants did not rely and act upon these statements, and therefore cannot set them up as estoppels. The statements, even taking them as made, do not necessarily and clearly mean that the house was kept open as an inn at the time named. A hotel is not necessarily an inn. Worcester's Dictionary. *Jones* v. *Osborn,* 2 Chit. R. 484. *Carpenter* v. *Taylor,* 1 Hilton, (N. Y.) 193. *Doe* v. *Leaming,* 4 Camp. 77. The statement as to burning fluid only implies that when the house was lighted it was done with burning fluid.

DEWEY, J.* The principal question here is as to the effect of certain papers executed by the insured, and delivered to the defendants as the notices and statements made in compliance with art. 8 of the conditions of the policy. We do not understand that any objection is taken, or was open to the defendants, that the instructions were not sufficiently favorable to them upon the question as to the effect of the hotel having been used for illegal purposes, or as to the effect of using burning fluid in the same. The questions as to such use of the building were submitted to the jury to be settled as questions of fact upon all the evidence produced by the respective parties. It is contended on

---

* GRAY, J. did not sit in this case.

the part of the defendants that, irrespective of any evidence that was produced at the trial by the plaintiffs, to show that no such illegal use had actually been made, the present action cannot be maintained, inasmuch as the notice of loss by fire, and the accompanying statement of the manner in which the building was used, contained certain facts which wholly avoided the policy. Such statement of facts by the insured, it is said, must at least, while it remains in the office, as the representation of the facts in the case, unmodified and unqualified by any further documents, justify the defendants in declining to pay the loss, and constitute a good defence to an action instituted under those circumstances. This leads us to the inquiry as to the character of this statement, and the legal effect to be given to it.

The provisions on this subject in the policies made at an earlier period were much more general than those found in this policy. To a certain extent, a disposition has been manifested by the courts to deal with these statements liberally in favor of the insured, when objections have been raised to their sufficiency. This has been so where the defects have arisen from want of fulness in the statement, to which the insurers at the time took no objection, but refused payment of the loss upon some ground distinct from that of any defect in the preliminary proofs. But the objection arising from the omission to file in due time a notice of the loss and statement of the circumstances was sustained in the case of *Smith* v. *Haverhill Ins. Co.* 1 Allen, 297.

As already suggested, the conditions in this and similar policies are something more than is embraced in what have been usually spoken of as " preliminary proofs." Those, particularly in marine insurances, related usually to the mere fact of the loss and the interest of the party, and gave such evidence as was then known to the party, authorizing the belief of a loss by the perils insured against. Under the conditions annexed to this policy, the statement of the loss by the insured is required to be accompanied by various other statements in reference to the subject of their claim, and particularly that the insured is to state " in what general manner the building insured, or containing the subject insured, and the several parts thereof, were

occupied at the time of the loss, and who were the occupants of such building."

In the present policy, the importance attached to the notice of the loss and statement of the circumstances, and the use of the property, is made obvious by the particulars required to be specified, and by the further provision that the loss is " to be paid within ninety days after due notice and proof thereof made by the insured in conformity to the conditions annexed to this policy."

The ground of defence to the present action is not the want of fulness in the notice of the loss and statement accompanying the same, but that the statement shows that the policy has been avoided by the acts of the insured, and that no liability exists thereon as against the defendants. In this statement the insured declared, " I occupied and kept the said building as and for a public hotel at the time of the said loss, and had done so from the date of said policy." This statement, taken in connection with the fact that the insured was not licensed to keep any such hotel, presented the case of carrying on an unlawful business, which avoided the policy, and would justify the defendants in not paying the loss.

A true statement was called for by the conditions of the policy. It was a condition precedent to the liability to be called upon to pay the loss. If this be rejected as being a false statement, then no statement has been filed, and for that reason the plaintiff cannot recover. If allowed to stand as a part of the statement, the policy had been avoided. It is difficult to perceive how the dilemma can be avoided, while this statement remains as the only one filed with the company.

The further statement which the insured has made, and which is described in the instrument under his signature as " in addition and as a part of his preliminary proofs under policy No. 2021," involves the case of the plaintiff in the further objection of stating " that the house was always lighted by burning fluid in lamps, but none had been lighted on the day of the fire, or since the evening before the fire."

So far as these statements or either of them were induced by the fraudulent acts of the insurers or their agents, no question

can exist as to the right of the plaintiff to avoid them, and they may properly be controlled by evidence showing the facts to be otherwise, and that there has been in the use of the building no violation of the conditions of the policy.

But the more difficult question is, whether, when the statement filed by the insured is his free and voluntary act, and the insurers have no reason to doubt the truth of it, the insured may be allowed to contradict it, and establish a different state of facts on the trial of an action to recover the loss, upon showing that the statement was made under a mistake. Upon this point, we think the ruling of the court was erroneous. We do not mean to say that the party may not correct mistakes of fact in his original statement, but such corrections are not for the first time to be made known to the insurers at the trial of the action to recover for the loss, by the introduction of evidence showing that the statements filed were not true in a material fact, which, if it existed as stated, was fatal to the right of the insured to recover.

In *Worsley* v. *Wood,* 6 T. R. 710, the effect of a want of the preliminary proof stipulated for and required by the terms of the policy was much considered, and it was held that a compliance therewith was a condition to be performed before action brought for the loss. In the case of *Irving* v. *Excelsior Ins. Co.* 1 Bosw. 507, where the statements made in the preliminary proof showed that the plaintiff was not entitled to recover for the alleged loss, the court held that the plaintiff could not contradict the statements thus made, on the ground that they were made through mistake. Take the case where the statement distinctly affirmed that the building had been alienated before the loss, or that the loss was occasioned by a riot or an insurrection; may not the insurers act upon such statements, and properly refuse to pay the loss?

The inquiry is, whether, if the plaintiff relies upon the statement thus filed by him as the notice required in compliance with the conditions of his policy, he must not take it as it is, take it as a true statement of his claim, and the foundation for his suit. Having stated the use of the premises to have been

such as would authorize the inference that the policy was **void,** and having filed no amendatory statement correcting such previous statement, can he upon the trial of the case be allowed to show that by mistake he has misled them in matters which he has obligated himself to state truly as a condition precedent to his right to remuneration for the loss? In the opinion of the court, the ruling excepted to was erroneous in qualifying the rule as to the conclusiveness of the statement, so as not to embrace a case where it was made by mistake. The defendants might properly rely upon the statement of the insured formally made under the provisions in the policy, at least until notice of such mistake; and an amendatory statement ought to be filed before instituting an action upon the policy.

Under the form of this policy, Henry Bates was the party insured, and the plaintiff has only the right to recover the avails of the same when it is made effectual by due notice and statement as to the loss.

We have not overlooked the points taken and urged in behalf of the plaintiff, that the court should allow estoppels excluding the truth only when honesty and good faith require it, and not to punish the party for an innocent mistake; but we apprehend that this rule can have no application to a question like the present, where the parties have created a liability solely on the terms stipulated in the policy.

It was also further urged that, as to the first statement, the defendants did not act upon it, but applied to the insured for further information, and obtained a more full and detailed statement. Perhaps so far as this second statement contradicts the first, it would be reasonable to give it the effect of an amended statement; but it must be taken as a whole, and, as such, if it qualifies the statement that the building was kept as a public hotel, it introduces another statement equally fatal to the policy, " that the house was always lighted by burning fluid in lamps."

In any view we can take of this case, we think the plaintiff must meet the defence upon the hypothesis that the statements of the loss and circumstances attending the same and the general

use of the property, which had been filed with the company, were true statements, and the insurers may rely upon them as such until duly notified that they were made under a mistake of the actual facts.                                    *Exceptions sustained.*